EDDIE LEE McCARTY (alias EDDIE LEE GRIFFIN) *v.* STATE

No. 40412          March 4, 1957          .92 So. 2d 853

*L. K. Saul,* Ellisville, for appellant.

*J. R. Griffin, Asst. Atty. Gen.,* Jackson, for appellee.

HALL, J.

Appellant was indicted for the murder of Buster Mitchell and was tried and convicted of manslaughter and sentenced to serve a term of fifteen years in the state penitentiary, from which he appeals here.

He first contends that he was entitled to a peremptory instruction for the reason that there was no believable evidence which contradicted his evidence and that consequently his version of the killing should be accepted. The shooting occurred at about 10:00 P. M. in a place known as Wilson's Cafe in the town of Ellisville. Jessie Wilson owned the cafe but she was employed at the Jones County Junior College and she had her sister Alma Carter operating the cafe. Buster Mitchell came to the cafe about 8:00 P. M. on the night of the killing and J. T. Green came at about 8:30 P. M. The appellant came in at about 10:00 P. M. Alma was standing behind the counter and J. T. and Buster were seated on stools at the counter, but there was some dis-

tance between them. According to Alma's testimony the appellant walked between Buster and J. T. and Buster told the appellant that he almost stepped on his foot. Appellant said that he didn't and Buster got up and put both hands in his pants' pockets and walked away from the counter. The appellant told Buster ''Looks like you want something at me'', and Buster said no, and appellant then said ''I will shoot you'' and pulled out his pistol and shot Buster. According to Alma's testimony Buster had nothing in his hands and she did not see anything in his pocket. When he was shot Buster said ''I thought you was my friend'' and fell on the floor and the appellant went on out the door and did not say anything further to Buster. According to Alma, Eddie Lee had been in the cafe about four minutes at the time of the shooting. She said he acted normal and wasn't drunk. She said that both Buster and the appellant talked all right and she didn't smell any liquor on either of them. She admitted that Buster was a little taller and heavier than appellant.

J. T. Green, the other person present in the cafe, testified substantially to the same effect as Alma. After the shooting he went and told Buster's sister who lived nearby and she began screaming and several other colored people came in the cafe and put Buster in a car and carried him to the hospital. He, too, testified that neither the appellant nor Buster was drunk. A physician with the South Mississippi Charity Hospital at Laurel testified that he saw Buster at about 10:50 P. M. after he was brought to the emergency room at the hospital. He said that Buster was then about dead from the gunshot wound and did die about two hours later while under an operation to remove the bullet which had lodged in Buster's spine. On the following day he performed an autopsy at the funeral home and described the course of the bullet and was definite in his testimony that the bullet wound caused the death.

A sister-in-law of appellant testified that immediately after the shooting the appellant came to her house and told her that he had shot Buster and gave her the pistol and she later gave it to "the law". She said that before appellant went to the cafe she and her husband and appellant and appellant's girl friend had drunk a half-pint of moonshine whiskey. Two of those who went into the cafe to remove Buster to the hospital testified that he had no weapon of any kind in his pockets or on the floor. The sheriff of the county testified that on the following day while he had the appellant in jail the appellant made a written confession in which he said that he had been drinking bootleg whiskey before he went to the cafe and that he carried the pistol with him; that he had never had any trouble of any kind with Buster; that he talked with Buster but could not remember anything that was said by Buster or himself; that he shot Buster and shot him for nothing and that during the entire time he was in the cafe there were no threats by any person to do any bodily harm to any other person and specifically that he did not threaten to kill or harm Buster, and that Buster did not threaten to kill or harm him, but that he just shot him over nothing and killed an innocent boy who was his good friend, and that the only reason he can give for shooting Buster was that he, the appellant, had been doing some drinking.

The appellant testified in his own behalf and said that he remembers the occasion of the shooting. According to his version, Buster was advancing toward him after the conversation about his almost stepping on Buster's foot.

Under the foregoing statements of the witnesses we do not think that the appellant was entitled to a peremptory instruction and we are further of the opinion that he should consider himself fortunate in that the jury convicted him of manslaughter instead of murder.

■■ ■ The appellant next complains that the trial court erred in admitting in evidence the written confession. Before it was admitted the circuit judge heard the testimony in the absence of the jury as to the voluntary character of the confession, which evidence was that the sheriff wrote the statement himself but wrote it exactly in accordance with what appellant told him, and further that before making any statement whatever the appellant was told that any statement he made might be used against him and that he did not have to make a statement at all; that no threats, promises or hope of reward, or any other action was taken against him to induce him to make the statement, but that the statement was of his own free will. It is true that the appellant said he was unable to write and that it was signed "His Mark X" by a colored cook in the jail. On the preliminary examination of evidence in support of the voluntary character of the confession, the appellant's counsel declined to have him take the stand and deny the same, and when appellant testified on the merits in his own behalf he stated that nobody threatened him in any manner to induce him to make the statement. He said that the statement was read to him before it was signed and he did not deny telling the sheriff and other officers exactly what was in the statement and gave as his only excuse for making the statement that he was scared, and then he admitted that he was scared because Buster had died. From the evidence surrounding the giving of this statement we are convinced, as was the trial court, that it was wholly voluntary and was given without any threat, coercion or promise and was properly admitted in evidence by the lower court.

■■■ The appellant also complains at the action of the lower court in the refusal of five instructions. Without discussing these instructions in detail, it is sufficient to say that some of them were clearly erroneous and the others were fully covered by four other instructions which the appellant obtained.

We conclude that the judgment of the lower court should be affirmed.

Affirmed.

*McGehee, C. J.,* and *Kyle, Holmes* and *Gillespie, JJ.,* concur.